E-FILED
Tuesday, 01 December, 2020  02:44:53 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SYLVESTER PURHAM, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 17-CV-3240 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

Now before the Court is Petitioner Sylvester Purham's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") (d/e 1).  Because Petitioner cannot show prejudice on his ineffective assistance of counsel claims, his § 2255 Motion is DENIED.

## I. FACTS

### A.  Petitioner Pleads Guilty in Case No. 12-CR-30019

On February 8, 2012, a federal grand jury charged Petitioner with several offenses, including conspiring with his brother Howard Purham to distribute 280 grams of cocaine base (crack) (Count 1).

United States v. Sylvester Purham, Case No. 12-CR-30019,
Indictment (d/e 21) (hereinafter Case No. 12-CR-30019).  The
charged conduct occurred from July 2010 to August 2011.  Id.
Petitioner was in prison on a three-year sentence for Felon in
Possession/Use of a Firearm beginning August 2010.  See PSR ¶
49, Case No. 12-CR-30019 (d/e 65).

On May 31, 2012, Petitioner appeared before United States
Magistrate Judge Byron G. Cudmore.  Petitioner was represented by
appointed counsel, Monroe McWard.  Petitioner signed a Notice
Regarding Entry of Plea of Guilty consenting to Judge Cudmore
conducting the Rule 11 proceedings.  Case No. 12-CR-30019 (d/e
36).

At the May 31, 2012 hearing, Petitioner was sworn and
questioned by the Court, found to be competent to enter a knowing
plea of guilty, and advised of his right to trial by jury and the
essential elements of the charge.  Case No. 12-CR-30019, Minute
Entry, May 31, 2012.  Judge Cudmore confirmed that Petitioner
had enough time to discuss his case with counsel and that he was
satisfied with counsel's efforts on his part.  Case No. 12-CR-30019,
May 31, 2012 Tr. at 8 (d/e 80).  Petitioner also confirmed that he

discussed the applicable advisory sentencing guidelines and the mandatory minimum penalties with counsel.  Id. at 14-15.

The prosecutor stated the elements of the offense.  The Magistrate Judge specifically advised Petitioner that the weight of the drug was a necessary element of proof to trigger the mandatory minimum penalties.  Id. at 16.  Petitioner indicated that he understood.  Id.

By agreement and with Petitioner's consent, the change of plea hearing was then continued to June 4, 2012.   Case No. 12-CR-30019, Minute Entry, May 31, 2012.  In the interim between the hearings, the Government filed a notice pursuant to 21 U.S.C. § 851, notifying Petitioner that the Government intended to seek enhanced penalties based on Petitioner's prior felony conviction for Manufacture/Delivery of a Controlled Substance in the Circuit Court of Adams County, case number 2006-CF-640.  Government's Notice of Prior Conviction (d/e 38).

When the hearing resumed on June 4, 2012, the Magistrate Judge further explained that, with one prior felony conviction, the potential penalty was a "mandatory minimum of 20 years and up to

life." Crim Case., Tr. at 7 (d/e 79).  The following exchange

occurred:

> THE COURT:  Do you understand that there's a mandatory minimum penalty?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  And if the notice of prior felony conviction is found to be valid, what mandatory minimum penalty does it trigger?
>
> THE DEFENDANT:  20 years.

Id. at 8.

The Magistrate Judge explained that the advisory sentencing

guidelines would advise the sentencing judge where the sentence

should fall.  Id. at 10.  The Magistrate Judge stated:

> THE COURT:  Do you understand that if those guidelines come in below the mandatory minimum, then the mandatory minimum becomes the guideline range, the advisory range.  Understood?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  You understand that the sentencing court has certain discretion to go above or below the advisory guidelines, but cannot go below the mandatory minimum. Understood?
>
> THE DEFENDANT:  Yes, sir.

Id. at 10.  When the Magistrate Judge asked Petitioner if anyone had threatened or forced him to plead guilty or promised him what his sentence would be, Petitioner responded, "No, sir."  Id. at 11-12.

The Government recited the factual basis for the plea, including the statement that the amount of crack cocaine involved in the conspiracy was in excess of 280 grams.  Id. at 14.  Petitioner indicated that he listened to what the Government stated and that the Government told the Court the truth.  Id. at 15-16.  Petitioner also explicitly agreed that the weight of the drug involved in the conspiracy was 280 grams or more.  Id. at 16.

On June 5, 2012, the Magistrate Judge filed a Report and Recommendation (Case No. 12-CR-30019, d/e 39) recommending that the Court accept Petitioner's guilty plea.  On June 26, 2012, this Court accepted the guilty plea.  See Case No. 12-CR-30019, Text Order, June 26, 2012.

## B.  Petitioner Moves to Withdraw His Guilty Plea

On November 20, 2012, the United States Probation Office disclosed its initial draft of the Presentence Investigation Report (PSR) to the parties.  Case No. 12-CR-30019 (d/e 65) (PSR identifying the report was prepared on November 20, 2012 and

revised August 6, 2013); see also April 25, 2013 Tr. at 11 (Petitioner stating he received the initial draft on November 23 or 24, 2012). The initial draft held Petitioner responsible for 1.9 kilograms of crack cocaine.  PSR ¶ 20.  Petitioner's offense level was 43 with a criminal history category of VI, resulting in a guideline range of life in prison.  PSR ¶ 92.

On November 21, 2012 and December 14, 2012, Petitioner sent the Court letters conveying his desire to withdraw his guilty plea.  Case No. 12-CR-30019 (d/e 42, 44).  Petitioner expressed concern about his counsel, McWard.  Petitioner also argued that, even though he had pleaded guilty, he thought, based on his counsel's advice, that he could argue the drug weight at sentencing.

The Court allowed McWard to withdraw as counsel and appointed Jason Vincent to represent Petitioner.  Case No. 12-CR-30019, Minute Entry, Jan. 28, 2013.  On April 25, 2013, the Court held a hearing on the motion to withdraw guilty plea.

Petitioner testified that he pleaded guilty to conspiracy to distribute a controlled substance, the controlled substance being 280 grams or more of crack cocaine.  Case No. 12-CR-30019, Tr. 4 (d/e 78) ("That's what the count stated.").  In Petitioner's words,

McWard told Petitioner that "we was just gonna plead guilty to the said count and go to sentencing and argue the drug weight."  Id. at 5.

When asked why he answered the questions as he did regarding the weight, Petitioner testified that his attorney told him it was just procedure to say yes.  Id. at 7:

> Because my lawyer said it was just procedure.  And if I say no to the questions, then he wouldn't accept my guilty plea and I wouldn't get to argue the drug weight at sentencing. So it was just procedure to say yes and we was gonna go on forward to sentencing.

Id.  Despite his answers to the Magistrate Judge's questions, Petitioner thought, based on what Petitioner said McWard told him, that he could argue for a sentence of less than 20 years.  Id. 7-8.

After Petitioner pleaded guilty, he conducted research. Petitioner learned that, because he pleaded guilty to the count, he pleaded guilty to the drug weight and he could not argue that the conspiracy involved less than 280 grams.  Id. at 5, 8.  Petitioner claimed he would not have pleaded guilty had he known that he could not demonstrate at sentencing that he should be held liable for less than 280 grams.  See id. at 12-13.  Petitioner also stated that he understood that if he withdrew his guilty plea and the

Government filed a second notice of prior conviction, he could be facing mandatory life in jail.  Id. at 21.

McWard testified that he went over the discovery with Petitioner extensively.  Id. at 23.  McWard advised Petitioner that the drug weight involved was 280 grams or more.  Id. at 24. McWard denied telling Petitioner that he could challenge the 280 grams to which Petitioner pleaded guilty.  Id. at 25.  Instead, McWard told Petitioner that he could challenge the drug weight at sentencing, but that Petitioner could not change his plea by trying to argue that the drug amount was under 280 grams.  Id. at 28. McWard denied ever telling Petitioner to give an untruthful answer or that answering in a certain way was just "procedure."  Id. at 26. McWard also explained to Petitioner that the Court had a certain amount of discretion in sentencing but that the mandatory minimum was 20 years.  Id. at 29.  McWard had "no doubt" that Petitioner knew he was facing a minimum of 20 years.  Id. at 25.

This Court denied the motion to withdraw the guilty plea, finding that the transcript of the plea hearing indicated that Petitioner understood the drug amount involved and the minimum 20-year sentence he faced.  Order 5 (d/e 52).

**C.     Court Sentences Petitioner to 360 Months' Imprisonment**

On August 22, 2013, the Court held Petitioner's sentencing hearing.  Howard was sentenced at the same time.

The PSR recommended a base offense level of 34 based on an "extremely conservative estimate" of 1.9 kilograms of crack cocaine. Case No. 12-CR-30019, PSR ¶¶ 20, 27 (d/e 65).  This included approximately 1.8 kilograms transported to Quincy in 2008—before Petitioner was incarcerated—and approximately 190 grams of crack cocaine transported between the dates charged in the Indictment— July 2010 to August 2011.  Petitioner also received a number of sentencing enhancements and a three-level reduction for acceptance of responsibility.  This resulted in a total offense level of 43.  The PSR also concluded that Petitioner had 15 criminal history points, which resulted in a criminal history category of VI.  With a total offense level of 43 and a criminal history category of VI, Petitioner's advisory guideline range was life.

Petitioner made several objections to the PSR.  As is relevant to the § 2255 Motion, Petitioner challenged: (1) the drug amounts attributed to Petitioner, including the approximately 1.8 kilograms transported to Quincy in 2008; (2) the two-level enhancement for

recruiting a 17-year-old; and (3) the receipt of three criminal history points for both Adams County Circuit Court Case No. 06-CF-618 and Case No. 06-CF-640.  The Government asserted that Petitioner was not entitled to the two-level reduction for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines or the additional one-level reduction under Section 3E1.1(b).[1]

This Court found that the drug amounts from 2008 were relevant conduct, and Defendant should be held accountable for a total of 1.9 kilograms of crack cocaine.  The Court sustained Petitioner's objection to a two-level enhancement for recruiting a 17-year-old.  The Court also found that the two Adams County convictions were separated by an intervening arrest and, therefore, three criminal history points were properly awarded for each conviction.  Finally, the Court amended Petitioner's offense level to reflect that Petitioner did not receive a three-level reduction for acceptance of responsibility.  Specifically, the Court agreed with the Government that Petitioner and his brother Howard falsely denied or frivolously contested the relevant conduct as it related to the

---

[1] The Government must make a motion for a defendant to receive the additional one-level reduction under Section 3E1.1(b).

offense of conviction.  Case No. 12-CR-30019, Tr. 112 (d/e 77).  The

Court also noted that Petitioner and Howard objected to making

threats to members of the conspiracy but that the evidence showed

that they orchestrated the threats either directly or indirectly based

on the evidence.  Id.[2]

The Court calculated Petitioner's total offense level at 43 and

criminal history category at VI, resulting in guideline range of life.

Id. at 124-25 (d/e 77); but see id. at 119 (noting that the offense

level was really greater than 43). [3]  The Court used its discretion,

however, in not applying the 18-to-1 crack cocaine ratio but

treating crack cocaine and powder the same.  Doing so gave

---

[2] At the sentencing hearing, the Government presented the following evidence:
(1) testimony from Nick Hiland that (a) Petitioner, in a recorded call, told
Howard that, if Sydney Reed was willing to stand by his statement, Howard
should "[b]eat his little ass"; (b) that Reed told Hiland that Howard threatened
him and that a fire occurred at Reed's mother's residence that Reed believed
someone involved with the Purhams had set; (c) that Jerrica Jones told Hiland
that Shiya White told Jones that Howard did not want Jones to testify and that
Howard threatened Jones; and (d) he located a recorded phone call of Howard
instructing White to tell Jones that she could testify how she chose but not to
testify to the threats from Howard; and (2) testimony from Jones that Howard
and Tyree Malone threatened her and that White told her that Howard wanted
her to testify that he did not threaten her.

[3] At the sentencing hearing, the Government stated that, given the ruling on
acceptance of responsibility, the enhancement for obstruction of justice should
also apply.  The Government also noted: "but again, it would be more than 43,
so I don't think it ultimately affects the guideline here."  Tr. at 119 (d/e 77).

Petitioner a total offense level of 36 and a criminal history category of VI, resulting in a sentencing guideline range of 324 to 405 months' imprisonment.  The Court sentenced Petitioner to 360 months' imprisonment.  Howard was sentenced to 240 months.[4]

## C.  Petitioner Appeals, and the Seventh Circuit Remands

Petitioner appealed.  The Seventh Circuit appointed attorney Britt Cramer.

On appeal, Petitioner raised two issues: (1) whether the drug conduct from 2008 constituted relevant conduct, and (2) whether the Court should have applied a three-level role in the offense enhancement rather than a four-level enhancement.  United States v. Purham, 754 F.3d 411, 413 (7th Cir. 2014) ("Purham I").  The Seventh Circuit found that this Court did not commit clear error in applying the leader/organizer enhancement.  Id. at 415-16.  The Seventh Circuit also found, however, that this Court clearly erred in characterizing the 2008 drug transaction as relevant conduct based on the record before it.  Id. at 414-15.  The Seventh Circuit reversed

---

[4] Howard was held accountable for at least 280 grams but less than 840 grams. He had a criminal history category of I.  After the Court took away his acceptance of responsibility and added an enhancement for obstruction of justice, his advisory guideline range was life.  Howard faced a mandatory minimum of 120 months.

and remanded for resentencing, noting that the Government was free at resentencing to provide "the necessary evidence [establishing] a link between Purham's 2008 drug transportation and the later distribution." Id. at 415.

## D. Court Resentences Petitioner to 324 Months' Imprisonment

On remand, the Court reappointed Jason Vincent. The Government chose not to present evidence establishing a link between Petitioner's 2008 drug transportation and the 2010/2011 transportation. Instead, the Government argued that the Court should use a base offense level of 32 when calculating the advisory guideline range because the conspiracy included at least 280 grams. Case No. 12-CR-30019, United States' Sentencing Commentary 2 (d/e 105) (citing U.S.S.G. § 2D1.1(c)(4)). Petitioner responded that the remaining drug amounts identified in the PSR only totaled 180.9 grams. Case No. 12-CR-30019, Def.'s Resp. to United States' Sentencing Commentary 3 (d/e 106) (arguing that the base offense level should be 18).

The Court calculated Petitioner's advisory guideline range as follows. The Court determined that the base offense level for the offense of conspiracy to possess 280 grams of cocaine base with the

intent to distribute was 32 under United States Sentencing Guideline Section 2D1.1(c) (2011)). <u>See</u> Case No. 12-CR-30019, Tr. 15 (d/e 125). The Court used the 280-gram figure because Petitioner admitted that the conspiracy involved 280 grams or more at his change of plea hearing. <u>Id.</u> at 14. The Court applied several enhancements totaling 10 levels. <u>Id.</u> at 15-16. The Court refused to adjust Petitioner's offense level for acceptance of responsibility under Guideline Section 3E1.1 because Petitioner falsely denied committing the offense and had orchestrated threats against members of the conspiracy either directly or indirectly. <u>Id.</u> at 16. That resulted in a total offense level of 42. <u>Id.</u>

The Court then applied the two-level reduction under Amendment 782 that was set to go into effect the next day. <u>Id.</u> at 17. This reduced Petitioner's offense level to 40. With 15 criminal history points and a criminal history category of VI, Petitioner's advisory sentencing guideline range was 360 months to life. <u>Id.</u>

The Court noted the 18-to-1 disparity in the Sentencing Guidelines' treatment of crack cocaine versus powder and exercised its discretion to vary downward from the Guidelines. <u>Id.</u> at 27-28. The Court determined that, if Petitioner had conspired to distribute

280 grams of powder rather than crack cocaine, his base offense level would have been 20.  Id. at 28.  With the applicable enhancements and the application of Amendment 782, Petitioner's total offense level would be 28, resulting in a guideline range of 140 to 176 months.  Id.  The Court further noted that the range would be increased to 240 months because of the statutory minimum.  Id.

The Court noted Petitioner had performed well in the Bureau of Prisons but also took into consideration that the statutory minimum for the 189.3 grams of crack was 240 months' imprisonment, the seriousness of the offense, Petitioner's different role in the conspiracy compared to Howard (who received 240 months), that Petitioner's daughter was involved on the train, the use of weapons, the use of threats, and the fire.  Id. at 29.  The Court sentenced Petitioner to 324 months' imprisonment.

### E.   Petitioner Appeals, and the Seventh Circuit Vacates the Conditions of Supervised Release

Petitioner appealed, and the Seventh Circuit appointed attorney Kent Carlson to represent him.  See Case No. 12-CR-30019, d/e 123.  On appeal, Petitioner argued that this Court exceeded the scope of the remand when the Court recalculated

Petitioner's base offense level, that Petitioner's 324-month sentence was unreasonable, and that the Court erred in imposing two special conditions of supervised release.  The Seventh Circuit affirmed in part and reversed in part.  United States v. Purham, 795 F.3d 761 (7th Cir. 2015) ("Purham II").

The Seventh Circuit held that this Court did not exceed the remand order.  The Seventh Circuit found that the district court "chose the obvious number—280 grams—which is the amount Purham pled guilty to conspiring to distribute."  Id. at 764.  The Seventh Circuit further found the 324-month sentence was not unreasonable.  Id. at 765.  Finally, the Seventh Circuit vacated two of the conditions of supervised release—the community-service condition and the gang-association condition—in light of United States v. Thompson, 777 F.3d 368 (7th Cir. 2015).  Purham II, 795 F.3d at 767.

## F.  On Remand, the Court Vacates the Two Conditions of Supervised Release

On remand, this Court declined to hold a sentencing hearing after the Government "filed a document stating its position that striking both conditions of supervised release [was] appropriate."

Text Order, Oct. 8, 2015 (citing United States' Position, d/e 129).
The Court noted that under Federal Rule of Criminal Procedure
32.1(c), no hearing is necessary when the relief granted is favorable
to the defendant and the Government has not objected after having
a reasonable opportunity to do so.  Id.  The Court entered an
Amended Judgment, and Petitioner appealed.

## G.  Petitioner Appeals, and the Seventh Circuit Dismisses the Appeal

On appeal, the Seventh Circuit appointed attorney Michelle
Jacobs to represent Petitioner.  See Case No. 12-CR-30019, d/e
139.  Jacobs filed a motion to withdraw under Anders v. California,
386 U.S. 738 (1967), asserting that the appeal was frivolous.  See
United States v. Purham, 667 F. App'x 552 (7th Cir. 2016)
(unpublished) ("Purham III").  On August 17, 2016, the Seventh
Circuit granted the motion to withdraw and dismissed the appeal.
Id.

## H.  Petitioner Files his § 2255 Petition Raising Ineffective-Assistance-of-Counsel Claims in Case No. 17-CV-3240

On October 25, 2017, Petitioner filed his Motion Under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person
in Federal Custody.  On January 12, 2018, the United States filed a

response to the § 2255 Motion.  On February 13, 2018, Petitioner filed a reply to the United States' response.  On July 30, 2018, the Court, after reviewing the record, determined that an evidentiary hearing was warranted and appointed Petitioner counsel.  The evidentiary hearing was conducted on January 24 and 25, 2019.  At the hearing, Petitioner called as witnesses each of his former attorneys—Monroe McWard, Jason Vincent, and Britt Cramer.  Petitioner also testified.

## II. ANALYSIS

A person convicted of a federal crime may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Relief under § 2255 is an extraordinary remedy because a § 2255 petitioner has already had "an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). Post-conviction relief under § 2255 is therefore "appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (internal quotation marks omitted).

To succeed on a claim of ineffective assistance, Petitioner must

prove that: "(1) his attorney's performance fell below an objective standard of reasonableness; and (2) he suffered prejudice as a result." Wyatt v. United States, 574 F.3d 455, 457-58 (7th Cir. 2009) (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).  The first prong is known as the "performance prong," and the second is known as the "prejudice prong."  See, e.g., Wyatt, 574 F.3d at 458.

Under the performance prong, the Court's scrutiny of counsel's performance is highly deferential.  Rodriguez v. United States, 286 F.3d 972, 983 (7th Cir. 2002).  Petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689 (also noting that the defendant must overcome the presumption that the challenged action might constitute sound trial strategy).  Petitioner must establish the "specific acts or omissions of counsel that [Petitioner] believes constituted ineffective assistance." Wyatt, 574 F.3d at 458.  The Court then determines if "such acts or omissions fall outside the wide range of professionally competent assistance." Id.

To satisfy the prejudice prong, Petitioner must show "that

there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been
different." Strickland, 466 U.S. at 694; see also Gentry v. Sevier,
597 F.3d 838, 851 (7th Cir. 2010). A reasonable probability is a
"probability sufficient to undermine confidence in the outcome."
Strickland, 466 U.S. at 694. Failure to prove either prong is fatal to
a claim of ineffective assistance. Chichakly v. United States, 926
F.2d 624, 630 (7th Cir. 1991); see also Strickland, 466 U.S. at 697
("If it is easier to dispose of an ineffectiveness claim on the ground
of lack of sufficient prejudice … that course should be followed.").

 To show that counsel was ineffective at the pleading stage,
Petitioner must show (1) that his attorney performed in a deficient
manner; and (2) that, but for his attorney's errors, Petitioner would
not have pleaded guilty and would have insisted on proceeding to
trial. Hill v. Lockhart, 474 U.S. 56-59 (1985); Coleman v United
States, 318 F.3d 754, 757-758 (7th Cir. (2003). Counsel must have
given advice that falls below the prevailing professional norms.
Chichakly, 926 F.2d at 628.

 To prove ineffective assistance of appellate counsel, Petitioner
must show that appellate counsel omitted a "'significant and

obvious issue' without a legitimate strategic reason for doing so."
Howard v. Gramley, 225 F.3d 784, 790 (7th Cir. 2000) (quoting
Mason v. Hanks, 97 F.3d 887, 893 (7th Cir. 1996)).  To be effective,
appellate counsel need "not raise every nonfrivolous argument on
appeal, but rather only those arguments most likely to succeed."
Davila v. Davis, 137 S. Ct. 2058, 2067 (2017) (citations omitted).
Declining to raise a claim on appeal is not deficient performance
unless that claim was plainly stronger than those actually
presented to the appellate court.  Id. (citing Smith v. Robbins, 528
U.S. 259, 288 (2000).

In his § 2255 Motion, Petitioner raised five grounds for relief,
all alleging ineffective assistance of counsel at each level of the
proceeding.  Two of the grounds alleging ineffective assistance of
trial counsel are consolidated.  One of the grounds asserted in the §
2255 Motion—appellate counsel Cramer's alleged ineffectiveness for
failing to appeal the Court's assessment of certain criminal history
points—was specifically withdrawn by Petitioner prior to the
evidentiary hearing.  The remaining grounds are discussed below.

**A.  Ground One**

Petitioner first argues that attorney McWard provided ineffective assistance of counsel by failing to properly investigate the drug amounts.  § 2255 Motion 5.  According to Petitioner, if attorney McWard had adequately investigated the drug amounts, McWard would have determined that Petitioner was only responsible for 189.3 grams of crack cocaine and would not have recommended that Petitioner plead guilty to conspiracy to distribute 280 grams.  Id.  According to Petitioner, McWard advised him that entering a plea of guilty was "just procedure" and that the drug amounts could be challenged later.  Petitioner asserts he was prejudiced because, if he had known otherwise, he would have proceeded to trial and would have only faced a mandatory 10 year minimum.  Id.

At the change of plea hearing, McWard advised the Court that he reviewed the Government's evidence with Petitioner, which Petitioner confirmed.  Case No. 12-CR-30019, Tr. at 15 (d/e 80).  At the hearing on the motion to withdraw guilty plea, McWard testified that he reviewed discovery with Petitioner extensively on the night before the change of plea hearing.  Case No. 12-CR-30019, Tr. at 23

(d/e 78).  McWard further advised Petitioner that the drug amount involved was 280 grams or more and that the charged offense carried a mandatory minimum of 20 years.  Id. at 24-25.  At the hearing on Petitioner's motion to withdraw his guilty plea, McWard also testified that he was certain that Petitioner understood that the offense carried a 20-year mandatory minimum, that McWard told Petitioner, if he pleaded guilty, he could challenge the drug weight, but not based on the argument that the weight involved was less than 280 grams, and he would not have advised Petitioner to lie or to answer any questions with a 'yes' as a matter of procedure.  See Case No. 12-CR-30019, Tr. at 24-26, 28 (d/e 78).

Petitioner cannot show prejudice because he cannot show that the allegedly deficient advice played a decisive factor in his decision to plead guilty.  See Wyatt, 574 F.3d at 458 (finding that the allegedly deficient advice did not play a decisive factor in the defendant's decision to enter a conditional plea in light of the statements in his "petition to enter the conditional plea that his decision to plead was not tied to any particular sentence" and his statements at the plea hearing showing that his decision to "make the conditional plea was not predicated upon any specific

sentence"). Petitioner's claims are belied by his statements at the change of plea hearing. See Bridgeman v. United States, 229 F.3d 589, 592 (7th Cir. 2000) (finding that the petitioner's argument that his counsel's advice rendered his plea involuntary was belied by his statements at the plea hearing, which are presumed truthful); United States v. Schaap, No. 2:12-cr-131, 2:14-cv-87, 2014 WL 4209441 at *6 (N.D. Ind. Aug. 26, 2014) (finding the petitioner's claim that counsel was ineffective by "promising a 10 year maximum term of imprisonment, but likely less," was "directly contradicted" by the plea agreement and the change of plea hearing).

The transcript of the change of plea hearing shows that the allegedly deficient advice was not a decisive factor in Petitioner's decision to plead guilty. Petitioner was advised that, with the filing of one § 851 Notice, he faced a mandatory minimum sentence of 20 years and up to life in prison. Case No. 12-CR-30019, Change of Plea Hearing Tr. at 7. Petitioner confirmed that he understood that, if the § 851 Notice was valid, he would be subject to a 20-year mandatory minimum. Id. at 8.

Petitioner was told that the Court would calculate Petitioner's
offense level and criminal history category under the Sentencing
Guidelines and would use those calculations to arrive at an
advisory sentencing range.  Id. at 10 (stating that the sentencing
judge "will be using certain advisory Sentencing Guidelines to give
her advice as to where [his] sentence should fall").  Petitioner also
indicated that he understood that "the sentencing court has certain
discretion to go above or below the advisory guidelines but cannot
go below the mandatory minimum."  Id.

At the change of plea hearing, Magistrate Judge Cudmore
asked Petitioner whether anyone, including his attorney, had
promised Petitioner a specific sentence, and Petitioner stated, "No,
sir."  Tr. 11.  The transcript of the change of plea hearing
demonstrates that Petitioner's decision to plead guilty was not
predicated upon any specific sentence or particular application of
the Sentencing Guidelines.  See Bethel, 458 F.3d at 718 (finding the
defendant could not show prejudice because the district court
advised the defendant "six or seven different ways that he could not
rely on any particular predictions or discussion about a possible
sentence when he entered his plea"); Thompson v. United States,

732 F.3d 826, 830 (7th Cir. 2013) (finding that "the district court's explanation of the sentencing process at [the petitioner's] plea colloquy removed any possible prejudice of [his counsel's] advice"); United States v. Martinez, 169 F.3d 1049, 1054 (7th Cir. 1999) (finding that although the defendant "asserts that he would not have pled guilty but for his attorney's flawed predictions, his Rule 11 hearing tells a different story.  Because of the great weight we place on these in-court statements, we credit them over his later claims").

Related to Petitioner's argument that McWard failed to properly investigate the drug weight, Petitioner also argues that McWard should have filed a motion to suppress evidence to find out where the prosecutor was getting the drug amounts.  Pet.'s Mem. Law Supp. § 2555 Motion 4, d/e 1-1.  A motion to suppress, however, is not a vehicle for obtaining discovery. Instead, the purpose of a motion to suppress is to "escape the inculpatory thrust of evidence in hand, not because its probative force is diluted in the least by the mode of seizure, but rather as a sanction to compel enforcement officers to respect the constitutional security of all of

us under the Fourth Amendment." <u>McCray v. Illinois</u>, 87 S. Ct. 1056, 1060 (1967).

To prevail on a claim of ineffective assistance of counsel based on the failure to file a motion to suppress, the petitioner must prove that the motion would have been meritorious.  <u>United States v. Cieslowski</u>, 410 F.3d 353, 360 (7th Cir. 2005).  The Sixth Amendment does not require trial counsel to pursue a futile motion to suppress.  <u>United States v. Jackson</u>, 103 F.3d 561, 575 (7th Cir. 1996).

Petitioner attempted to make a showing in his § 2255 Motion that a motion to suppress would have been meritorious.  <u>See</u> Pet.'s Mem. Law Supp. § 2255 Motion 6-7.  In Petitioner's post-evidentiary hearing Memorandum of Points and Authorities (d/e 27), filed with the benefit of appointed counsel, Petitioner, in arguing for a liberal construction of Petitioner's pro se § 2255 Motion, asserts that the claim that McWard should have filed a motion to suppress is simply part of Petitioner's argument that McWard did not effectively investigate the drug weight, but does not press the argument further or otherwise attempt to make a showing that a motion to

suppress would have been meritorious.  <u>See</u> Purham's Mem. of Points & Authorities 5 n.3, d/e 27.

Petitioner also argues that McWard was ineffective for failing to adequately advise Petitioner of the consequences of entering a guilty plea.  § 2255 Motion 6.  Specifically, Petitioner claims McWard did not advise Petitioner that he could lose acceptance of responsibility if he frivolously contested the PSR.  <u>Id.</u> Petitioner asserts that he would have proceeded to trial if he knew he would lose acceptance if he challenged the drug amounts.  He also argues that he did not frivolously contest the drug weights.

As already discussed, Petitioner's answers to Judge Cudmore's questioning at the change of plea hearing demonstrate that he understood that the conspiracy involved at least 280 grams of crack cocaine, and that that quantity subjected Petitioner to a 20-year mandatory minimum.  At the hearing on Petitioner's motion to withdraw his guilty plea in the criminal case and at the evidentiary hearing in this case, McWard consistently testified that he advised Petitioner that he could challenge a drug weight above 280 grams at sentencing but not attempt to change the charge he pleaded guilty to by trying to reduce the drug weight below 280 grams.

In order to qualify for the reduction for acceptance of responsibility, a defendant must "(1) demonstrate sincere remorse or contrition, (2) truthfully admit the conduct comprising the offense, and (3) neither falsely deny nor frivolously contest relevant conduct." United States v. Eschman, 227 F.3d 886, 891 (7th Cir. 2000).  To receive a reduction for acceptance of responsibility, defendants are not required to "affirmatively admit relevant conduct *beyond the offense of conviction*," and they may make good-faith challenges to relevant-conduct determinations; but they may not attempt falsely to deny past activities.  United States v. Ghiassi, 729 F.3d 690, 698 (7th Cir. 2013) (emphasis added).

Here, Petitioner not only challenged relevant conduct beyond the offense of conviction as is his right, he also consistently contested the offense conduct underlying the guilty plea and conviction.  As McWard testified on multiple occasions and as the Government argues in its post-evidentiary hearing Argument (d/e 26), the gravamen of Petitioner's claim regarding acceptance of responsibility as it relates to challenging the drug quantity is that Petitioner does not believe he could be held responsible for any drug conduct by the conspiracy that occurred during the period in which

Petitioner was incarcerated.  At most Petitioner's claim shows that he misunderstood McWard's advice regarding challenging the drug quantity at sentencing, but Petitioner has not established that McWard's allegedly defective advice—or failure to advise—fell below the objective standard of reasonableness or prejudiced Petitioner. Based on the foregoing, Petitioner is not entitled to relief on ground one.

**C.  Ground Two**

Petitioner next argues that attorney Vincent was ineffective for failing to object to the application of the 240-month minimum in light of Alleyne v. United States, 570 U.S. 99 (2013).  § 2255 Motion 8.  In Alleyne, the United States Supreme Court held that "any fact that increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury."  Id. at 103.  Petitioner asserts that the jury, and not the judge, should have determined the amount of drugs that triggered the mandatory minimum.  § 2255 Motion 8.  According to Petitioner, if counsel had objected, the Court may have allowed Petitioner to withdraw his guilty plea or the issue would have been preserved for appeal.  Id.

However, Petitioner waived his right to a jury trial and pleaded guilty to conspiracy to distribute at least 280 grams of crack cocaine. As stated by the Seventh Circuit: "An admission is even better than a jury's finding beyond a reasonable doubt; it removes all contest from the case." United States v. Warneke, 310 F.3d 542, 550 (7th Cir. 2002) (citing United States v. Broce, 488 U.S. 563, 570 (1989)); see also Tennison v. United States, No. 15-1113, 2015 WL 1540990, at *5 (C.D. Ill. Apr. 1, 2015) (finding, in response to the petitioner's Alleyne claim, that by pleading guilty, the petitioner "waived his right to have a jury determine the drug quantity").

Because the failure to raise a losing argument does not constitute ineffective assistance of counsel, Petitioner is not entitled to relief on this ground. See Carrion v. Butler, 835 F.3d 764, 779 (7th Cir. 2016); Stone v. Farley, 86 F.3d 712, 717 (7th Cir. 1996).

**E.   Ground Three**

Finally, Petitioner argues that appellate counsel Cramer was ineffective for failing to appeal the additional drug amount finding. § 2255 Motion 9. Specifically, Petitioner asserts that Cramer should have challenged the 126 grams of crack cocaine Petitioner allegedly agreed with his brother to transport on the basis that the

information was unreliable. Id.; see also Case No. 12-CR-30019, PSR ¶ 12, d/e 65 (stating that the 126 grams represented two separate transportations of 63 grams of crack cocaine from Chicago to Quincy).

At the time Cramer was appointed to represent Petitioner, Petitioner was accountable for 1.9 kilograms of crack cocaine. On appeal, Cramer did challenge the drug quantity calculation— namely, the transportation of 1.8 kilograms of crack cocaine to Quincy in 2008 included as relevant conduct and which constituted the bulk of the drug weight for which Petitioner was held accountable —and prevailed on that issue on appeal. See Purham I, 754 F.3d at 415-16.

At the evidentiary hearing on Petitioner's § 2255 Motion, Cramer testified that during the appeal she was cognizant of the fact that Petitioner wanted to challenge his guilty plea in a collateral attack proceeding. Tr. 15-16. Cramer further testified that she had a conversation with Petitioner concerning which issues were appropriate to be raised on direct appeal and which issues were appropriate to preserve for a collateral proceeding. Id. at 24. According to Cramer—mindful of a future collateral proceeding and

potential issues of waiver—on direct appeal, she focused on

sentencing factors such as the relevant conduct determination or

other enhancements that did not implicate the guilty plea to

conspiring to distribute 280 grams or more of crack cocaine and the

offense conduct underlying the plea.  Id.  Cramer testified that she

expressed her concern to Petitioner that raising the 126-gram issue

on direct appeal was close to the line and ran the risk of waiver in a

subsequent collateral proceeding.  Id. at 31.  Cramer further

testified that she advised Petitioner that she did not think it was

advisable to raise the 126-gram issue on direct appeal in light of the

risk of waiver.  Id. at 37.

   Based on the record and given that appellate counsel need not

raise every nonfrivolous argument on appeal, Cramer made a

strategic decision to omit the 126-gram issue in consideration of a

future collateral proceeding and the potential risks of waiver.

Cramer successfully challenged the drug quantity calculation by

way of challenging the relevant conduct—and prevailed on that

issue—resulting in a lower sentence for Petitioner.  Cramer's

conduct did not fall below the objective standard of reasonableness,

or result in additional prison time for Petitioner, particularly in light

of the plea of guilty to 280 grams which Cramer was aware

Petitioner wished to attack in a collateral proceeding.  Petitioner is

not entitled to relief on this ground.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255

Proceedings For the United States District Courts, this Court

declines to issue a Certificate of Appealability.  A certificate may

issue only if Petitioner has made a substantial showing of the denial

of a constitutional right.  28 U.S.C. § 2253(c)(2).  Petitioner must

show that "reasonable jurists could debate whether (or, for that

matter, agree that) the petition should have been resolved in a

different manner or that the issues presented were adequate to

deserve encouragement to proceed further."  Peterson v. Douma,

751 F.3d 524, 528 (7th Cir. 2014) (quotations and citations

omitted).  Because the claims at issue do not satisfy this standard,

the Court denies a Certificate of Appealability on all claims.

### IV. CONCLUSION

For the reasons stated, the Motion to Vacate, Set Aside, or

Correct Sentence Pursuant to 28 U.S.C. § 2255 (d/e 1) is DENIED.

The Court also DENIES a Certificate of Appealability on all claims.

Petitioner's Motions Requesting an Expedited Decision on Petitioner's Section 2255 Petition (d/e 31, 32), Petitioner's Appointed Counsel's Motion and Renewed Motion Seeking Interim Compensation (d/e 30, 33), and Petitioner's Motion for Status (d/e 35) are DENIED AS MOOT.  The United States' Motion for Substitution of Counsel (d/e 34) is GRANTED.  Assistant United States Attorney Gregory Gilmore is substituted as counsel for the United States.

ENTER: December 1, 2020

FOR THE COURT:

/s/Sue E Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE